IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALVIN ROYBAL,
JERRY B. SANCHEZ, and
ANSELMO SMITH,

     Plaintiffs,

vs.                                                                 Civ. No. 13-25 KG/KBM

CITY OF ALBUQUERQUE,
RICHARD J. BERRY, Mayor,
ROBERT PERRY, Chief Administrative Officer,
VINCENT YERMAL, Director of Human Resources,
MARY SCOTT, Deputy Dir. of Human Resources,
BRUCE RIZZIERI, Transit Department Director,
CITY PERSONNEL BOARD,
CITY LABOR-MANAGEMENT RELATIONS BOARD,
BARBARA ALBIN, Personnel Hearing Officer, and
PAULA I. FORNEY, Attorney.

MEMORANDUM OPINION AND ORDER

     This is an employment case brought by former City of Albuquerque bus drivers who tested positive for marijuana use and subsequently received disciplinary actions.  Defendants City of Albuquerque, Richard J. Berry, Robert Perry, Vincent Yermal, and Bruce Rizzieri (collectively, the Management Defendants) move to dismiss Plaintiff Alvin Roybal's claims in his Complaint for Violation of Constitutional and Contractual Rights and Wrongful Termination, Abuse of Process, and Prohibited Labor Practices (Doc. 1-1) (Complaint), filed December 20, 2012, or in the alternative, the Management Defendants move for summary judgment on those claims.  *See* Motion to Dismiss or, in the Alternative, Motion for Summary Judgment Dismissing Complaint in its Entirety (Doc. 16) (Motion to Dismiss or for Summary Judgment), filed Jan. 30, 2013; Memorandum in Support of Motion to Dismiss or, in the Alternative, Motion for Summary Judgment Dismissing Complaint in its Entirety (Doc. 17), filed Jan. 30, 2013.  The Complaint

originally named only Plaintiff Roybal as plaintiff and named as defendants City of

Albuquerque, Berry, Perry, Yermal, Rizzieri, City Personnel Board, and Barbara Albin.  Plaintiff

Roybal did not respond to the Motion to Dismiss or for Summary Judgment.  *See* Notice of

Completion of Briefing (Doc. 23), filed Feb. 20, 2013.

  After Defendants filed the Motion to Dismiss or for Summary Judgment, Plaintiffs filed

Plaintiffs' First Amended Complaint for Violations of Constitutional and Contractual Rights and

Wrongful Termination, Abuse of Process, and Prohibited Labor Practices (Doc. 26) (First

Amended Complaint) on February 20, 2013. [1] The First Amended Complaint does not bring any

new claims, but it adds Plaintiffs Jerry B. Sanchez and Anselmo Smith, and it adds Defendants

Mary Scott, the City Labor-Management Relations Board, and Paula I. Forney.  The Motion to

Dismiss or for Summary Judgment, therefore, remains applicable to Plaintiff Roybal's claims

against the Management Defendants.  *See* Memorandum in Support of Motion to Dismiss

Amended Complaint or, the Alterative, Motion for Summary Judgment (Doc. 41) at 4, filed Mar.

26, 2013 (subsequent dispositive motion concerning First Amended Complaint "addresses only

the newly added plaintiffs and newly added Defendant Mary Scott.  The earlier motion, Docs.

16, 17, addressing Plaintiff Royal and the prior defendants is pending with no response filed by

plaintiff.").  The Court concludes that the Motion to Dismiss or for Summary Judgment is

granted for the following reasons.

---

[1] On October 17, 2013, the Court denied Defendants' Motion to Strike Amended Complaint and
Memorandum in Support Thereof (Doc. 34), filed March 5, 2013.  *See* Memorandum Opinion
and Order (Doc. 62).  The Court concluded that Plaintiffs properly filed the First Amended
Complaint as a matter of course.

A. *Background*

    1. *Uncontested Facts Regarding Plaintiff Roybal's Claims*

On December 5, 2009, Defendant City of Albuquerque administered a random drug test to Plaintiff Roybal which he failed. Ex. A-1 (Doc. 17-2). As a result of the positive drug test, Defendant City of Albuquerque placed Plaintiff Roybal on administrative leave and gave Plaintiff Roybal a letter of investigation. Ex. A-2 (Doc. 17-2). In addition, Defendant City of Albuquerque notified Plaintiff Roybal on four occasions that a pre-determination hearing would be held in which he could challenge allegations that he violated the 2006 City of Albuquerque Substance Abuse Policy Manual. *See* Exs. A-3 to A-6 (Doc. 17-2). The 2006 substance abuse policy provided for zero-tolerance of drug use and for termination of employment as a penalty for a first-time violation of the substance abuse policy. Significantly, Defendant City of Albuquerque did not negotiate with the appropriate unions regarding implementation of the zero-tolerance drug policy.

Defendant City of Albuquerque held pre-determination hearings on January 4, 2010 and March 5, 2010, respectively. The personnel hearing officer subsequently found that Plaintiff Roybal violated the 2006 zero-tolerance substance abuse policy and he recommended termination of Plaintiff Roybal's employment. Ex. A-7 at 1 (Doc. 17-2) at 4. On June 3, 2010, Defendant Rizzieri, the City of Albuquerque Transit Director, approved the personnel hearing officer's recommendation to terminate Plaintiff Roybal's employment, effective June 3, 2010. *Id*. at 5. On June 14, 2010, Plaintiff Roybal appealed the termination of employment decision. Ex. A-9 (Doc. 17-2).

While that termination of employment appeal was pending, Defendant City of Albuquerque reinstated Plaintiff Roybal, on February 23, 2011, to his job "effective March 12,

2011 from the day [he was] terminated, June 3, 2010" and determined that Plaintiff Roybal could receive back pay. Ex. A-10 at 1 (Doc. 17-3).  Defendant City of Albuquerque also scheduled a pre-determination hearing on March 17, 2011, to consider whether Plaintiff Roybal "should be disciplined and if so, how much discipline is warranted" for testing positive on the random drug test.  *Id*.  In fact, Defendant City of Albuquerque placed Plaintiff Roybal on administrative leave with pay pending the results of the March 17, 2011, pre-determination hearing.  Ex. A-11 (Doc. 17-3).

Defendant City of Albuquerque based its February 2011 decision to reinstate Plaintiff Roybal to his job and to schedule a pre-determination hearing on the issue of discipline on a November 2009 decision in state district court decision invalidating the 2006 zero-tolerance drug policy that required termination of employment for a first-time positive drug test result.  *See* Ex. A at ¶¶ 7-8. The state district court concluded that Defendant City of Albuquerque had not in good faith negotiated the new drug testing penalties in the 2006 substance abuse policy with the appropriate unions.  *Id.* at ¶ 7. The state district court, therefore, remanded the matter to Defendant City Labor-Management Relations Board. *Id.*  As a result of these actions by the state district court, Defendant City of Albuquerque retracted its application of the 2006 zero-tolerance drug policy to Plaintiff Roybal and instead applied the previous 1999 substance abuse policy which provided for penalties less than employment termination for a first-time violation of the substance abuse policy.  *Id*. at ¶¶ 8 and 10.  The 1999 substance abuse policy is known as the "second-chance" drug policy.  There is no evidence in the record to indicate that application of the second-chance drug policy to Plaintiff Roybal was unlawful.

Defendant Mary Scott, the City of Albuquerque Deputy Director of Human Resources, conducted the March 17, 2011, pre-determination hearing.  Neither Plaintiff Roybal nor his

attorney, Paul Livingston,[2] attended the pre-determination hearing nor did they submit a written response regarding Plaintiff Roybal's failure to pass the random drug test.  Ex. A-12 (Doc. 17-3) at 1.  Defendant Scott determined that Plaintiff Roybal violated Defendant City of Albuquerque's substance abuse policy when he failed the random drug test.  She also recommended a 20-day suspension without pay and that Plaintiff Roybal enroll in Defendant City of Albuquerque's Substance Abuse Program.  *Id*. at 3-4.  Defendant Scott further stated:  "This will be considered a last chance agreement pursuant to the Substance Abuse Policy.  If you violate or fail to comply with the Substance Abuse Policy or the mandates of the Substance Abuse Professional, you will be terminated."  *Id*. at 4.  Defendant Scott noted that Plaintiff Roybal had the right to appeal her determination and recommendations.  *Id*.  On March 21, 2011, Defendant Rizzieri approved Defendant Scott's determination and recommended discipline.  *Id*.

On March 31, 2011, Defendant Scott issued a Direct Order to Report requiring Plaintiff Roybal to report to the Substance Abuse Program Manager on April 5, 2011, and indicating that the 20-day suspension would begin on April 4, 2011.  Ex. A-13 (Doc. 17-3).  Defendant Scott stated in the Direct Order to Report that "failure to follow this direct order may result in a charge of insubordination and could lead to disciplinary action up to and including termination of employment."  *Id*.  Plaintiff Roybal failed to meet with the Substance Abuse Program Manager as Defendant Scott had ordered.  Consequently, Defendant City of Albuquerque set a pre-determination hearing on April 21, 2011, so Plaintiff Roybal could explain why he did not meet with the Substance Abuse Program Manager.  Ex. A-14 (Doc. 17-3).

Neither Plaintiff Roybal nor Mr. Livingston attended the April 21, 2011, pre-determination hearing.  On April 29, 2011, the personnel hearing officer found that Plaintiff

---

[2] Mr. Livingston also represents the Plaintiffs in this case.

Roybal violated several City Personnel Rules and Regulations by failing to meet with the Substance Abuse Program Manager. Ex. A-15 (Doc. 17-3). The personnel hearing officer also found that Plaintiff Roybal "had no intention of returning to work and that [his] failure to contact [the Substance Abuse Program Manager] or any other authorized City of Albuquerque employee as [he was] instructed [was] an act of insubordination. Attempts to deliver documentation to [Plaintiff Roybal had] been documented, and [Plaintiff Roybal] to date, [had] still made no attempt to contact anyone regarding [his] employment." *Id*. at 5. The hearing officer further concluded that Plaintiff Roybal's failure "to report to work … could be deemed an automatic resignation from employment." *Id.* The personnel hearing officer recommended termination of employment, which Defendant Rizzieri approved on April 29, 2011. *Id.* Plaintiff Roybal did not appeal that decision to terminate his employment.

Plaintiff Roybal's appeal of the June 3, 2010, termination of employment was still pending when Defendant City of Albuquerque terminated Plaintiff Roybal's employment on April 29, 2011. Defendant Albin states in her Recommendation of the Hearing Officer that the appeal was first assigned to personnel hearing officer Rita Siegel and then to Dr. Zane Reeves. Ex. A-16 (Doc. 17-3) at 1. According to Defendant Albin, on May 12, 2011, Defendant City of Albuquerque filed a motion to dismiss the appeal on the ground that the appeal was moot because Defendant City of Albuquerque reinstated Plaintiff Roybal to his job with full benefits and offered back pay. *Id.* at 2. Defendant Albin further notes that Dr. Reeves held an evidentiary hearing on November 7, 2011, with one witness testifying. *Id.* Mr. Livingston stated at the hearing that Plaintiff Roybal requested reinstatement to his job, back pay, and full benefits to compensate him for the June 3, 2010, termination of employment. Ex. C (Doc. 17-5) at 22. Defendant Albin observes in her Recommendation of the Hearing Officer that the hearing was

supposed to be continued on December 19, 2011, but Defendant City of Albuquerque asked that its motion to dismiss be referred to Defendant City Personnel Board.

In addition, Defendant Albin states in the Recommendation of the Hearing Officer that on December 15, 2011, Dr. Reeves, in an electronic message, denied Defendant City of Albuquerque's "supplemental motion to dismiss" and referred the matter to Defendant City Personnel Board. Ex. A-16 (Doc. 17-3) at 2-3. According to Defendant Albin, that supplemental motion to dismiss was apparently attached to Defendant City of Albuquerque's June 11, 2012, motion for a prehearing conference and based on a ruling in a state court case. *Id.* at 5. Defendant Albin notes that it did not appear that Dr. Reeves addressed Defendant City of Albuquerque's previous motion to dismiss arguing mootness. *Id.* Defendant Albin also notes that Dr. Reeves did not issue a Recommended Decision nor did he submit a summary of the evidence or recommended findings to Defendant City Personnel Board with respect to the supplemental motion to dismiss. *Id.* Defendant Albin further states that on February 8, 2012, Defendant City Personnel Board refused the referral and requests to intervene. Defendant Albin states that Defendant City Personnel Board, therefore, remanded the case to Dr. Reeves to issue Findings of Fact and Conclusions of Law. *Id.* at 3.

Additionally, Defendant Albin notes, without explanation, that on March 28, 2012, Defendant City of Albuquerque asked Dr. Reeves to recuse himself from the appeal. *Id.* Dr. Reeves refused to recuse himself. According to Defendant Albin, Defendant City of Albuquerque then filed a notice of appeal to Defendant City Personnel Board to disqualify Dr. Reeves from presiding over a scheduled hearing on May 2, 2012. *Id.* Defendant Albin further states that Defendant City Personnel Board refused to act on the appeal and remanded the appeal to Dr. Reeves to issue Findings of Fact and Conclusions of Law. Defendant Albin also states

that Dr. Reeves convened the May 2, 2012 hearing but announced that Defendant City of

Albuquerque had cancelled his contract to serve as a personnel hearing officer effective

immediately.  *Id*.  Defendant Albin notes that Dr. Reeves adjourned the hearing without taking

any testimony.

Furthermore, Defendant Albin states in her Recommendation of the Hearing Officer that

after Defendant City of Albuquerque terminated its contract with Dr. Reeves, Defendant City of

Albuquerque assigned the appeal to Defendant Albin.  Plaintiff Roybal objected to having

Defendant Albin assigned to the appeal.  In fact, according to Defendant Albin, neither Plaintiff

Roybal nor Mr. Livingston appeared for a prehearing conference held by Defendant Albin on

June 25, 2012.  *Id*. at 4.  Nonetheless, Defendant Albin provided Plaintiff Roybal a period of 14

days from the date of the prehearing conference to submit a written response to Defendant City

of Albuquerque's motion to dismiss.  *Id*. at 5.  In addition, Defendant Albin states that Plaintiff

Roybal did not submit a response, but Mr. Livingston stated in electronic messages that Dr.

Reeves had already denied the motion to dismiss. *Id*.

On August 3, 2012, Defendant Albin issued recommendations on Plaintiff Roybal's

appeal of his initial termination of employment on June 3, 2010.  Defendant Albin first rejected

Plaintiff Roybal's assertion that Dr. Reeves had denied Defendant City of Albuquerque's motion

to dismiss based on mootness.  *Id*. at 5-6.  Defendant Albin found that Plaintiff Roybal admitted

to failing the drug test and that his goal in appealing that first termination of employment was to

return to work with back pay and full benefits.  *Id*. at 9-10.  Defendant Albin also found that

Defendant City of Albuquerque reinstated Plaintiff Roybal to his job in March 2011, thereby

reversing the termination of employment decision.  She further found that Defendant City of

Albuquerque offered back pay and restored full benefits.  *Id*. at 10.  In addition, Defendant Albin

found that Plaintiff Roybal did not report to work upon reinstatement to his job and that he had

not provided Defendant City of Albuquerque with documentation necessary to calculate back

pay.  *Id*.  Defendant Albin, therefore, concluded and recommended that the appeal be dismissed

as moot.  *Id*. at 11. Defendant City Personnel Board approved Defendant Albin's

recommendations.  *Id*. at 12.

      2.  *Pertinent Procedural Summary of the Case*

      On October 12, 2012, Plaintiff Roybal filed a Notice of Administrative Appeal (Doc. 15-

1) in the Second Judicial District Court, County of Bernalillo, State of New Mexico.  Plaintiff

Roybal appealed Defendant City Personnel Board's approval of Defendant Albin's

recommendation to dismiss Plaintiff Roybal's appeal of the decision to terminate his

employment for failure to pass a random drug test.  Plaintiff Roybal alleges in the Notice of

Administrative Appeal that he was "den[ied] a fair hearing before a neutral hearing officer…."

*Id*. at 1.  Instead of filing a statement of appellate issues to support the Notice of Administrative

Appeal, Plaintiff Roybal filed the Complaint.

      Shortly after Plaintiff Roybal filed the Complaint, Defendants removed this case to

federal district court.  *See* Notice of Removal (Doc. 1), filed Jan. 10, 2013.  On January 30, 2013,

Defendants filed their Motion to Dismiss or for Summary Judgment.  On February 20, 2013,

Plaintiffs filed the First Amended Complaint as a matter of course.  On August 3, 2013, the

Honorable Chief United States Magistrate Judge Karen B. Molzen granted Defendants' Motion

for Stay of Proceedings and Memorandum in Support (Doc. 18), filed January 30, 2013, and

stayed discovery pending a decision "on the Motion for Summary Judgment based on qualified

immunity."  *See* Order (Doc. 59).

   *3. The First Amended Complaint and Plaintiff Roybal's Claims*

   Plaintiff Roybal brings six Counts against Defendants "under 42 U.S.C. Sec. 1983 and the laws and constitutions of the United States and the State of New Mexico."  First Amended Complaint at ¶ 5.  In Count 1, Plaintiffs claim that they had a protected property interest in their employment and that Defendants violated their right to due process in several ways. First, Plaintiffs contend that after Defendant City of Albuquerque terminated their employment, they were "entitled to a full and fair post-termination hearing before a neutral and unbiased hearing officer and a fair and neutral Personnel Board."  *Id.* at ¶ 59.  The Court assumes that with respect to Plaintiff Roybal, he is alleging that his appeal of the initial termination of employment was not "full and fair."  Plaintiff Roybal apparently maintains that Defendant Albin was biased against him.  Second, Plaintiffs allege that "[t]he City used its drug testing penalties to terminate Plaintiffs' employment under its zero-tolerance or second-chance drug testing penalties even though the City refused to negotiate over both those drug testing penalties."  *Id.* at ¶ 63.  Finally, Plaintiffs Roybal and Smith contend that Defendants used a scheme to reinstate them to their jobs "so they could subject the drivers to second disciplinary actions for the same marijuana offenses."  *Id.* at ¶ 64.

   In Count 2, Plaintiffs allege that Defendants violated the Fourth Amendment by subjecting them to drug testing without a warrant based on probable cause.  In Count 3, Plaintiffs Roybal and Smith raise an unjust discipline and termination claim.  In Count 4, all three Plaintiffs bring claims for breach of contract and for breach of the duty of good faith and fair dealing.  Plaintiffs maintain that they had an "implied contract of employment consisting of the City's Merit System Ordinance, the Personnel Rules and Regulations, and any applicable

collective bargaining agreements." *Id*. at ¶ 83. In Count 5, Plaintiffs Roybal and Smith contend

that Defendants engaged in malicious abuse of process.

Finally, in Count 6, all of the Plaintiffs bring an unfair and prohibited labor practices

claim. Plaintiffs allege that Defendant City of Albuquerque has yet to negotiate drug testing

penalties with the appropriate unions and that Defendant City of Albuquerque reinstated its zero-

tolerance drug testing policy effective February 1, 2012. *Id*. at ¶¶ 9-93. Plaintiffs also contend

that "by implementing and applying both 'zero-tolerance' and 'second-chance' drug testing

penalties without prior negotiations on the subject, Defendants are knowingly and willfully

engaging in unfair and prohibited labor practices and actions." *Id*. at ¶ 94.

### 4. *The Motion to Dismiss and for Summary Judgment*

The Management Defendants bring this Motion to Dismiss and for Summary Judgment

under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(c). The Management Defendants argue

first that the case should be dismissed for lack of prosecution because Plaintiff Roybal did not

file a statement of appellate issues as required by Rule 1-074(J)(1) NMRA 1998. The

Management Defendants also argue that (1) Plaintiff Roybal waived his procedural due process

claim and, in any event, he received all the procedural due process he was due; (2) the Fourth

Amendment warrant requirement did not apply to Plaintiff Roybal because Defendant City of

Albuquerque employed him as a city bus driver, a safety-sensitive position; (3) the New Mexico

Tort Claims Act (NMTCA) does not waive sovereign immunity for a tort of unjust discipline and

termination, and a constitutional claim for unjust discipline and termination fails for the same

reasons as the due process claim; (4) the breach of contract claim and the breach of the duty of

good faith and fair dealing claim are vague, and Plaintiff Roybal should have initially brought

those claims in the administrative proceedings; (5) the NMTCA does not waive sovereign

11

immunity for the malicious abuse of process claim; and (6) the Court should dismiss the unfair and prohibited labor practices claim because Defendant City of Albuquerque did not ultimately terminate Plaintiff Roybal's employment on the basis of the random drug test or the zero-tolerance drug policy.  If the Court does not dismiss the First Amended Complaint on the grounds described above, the Management Defendants further argue that they are entitled to qualified immunity with respect to the constitutional claims.

*B.  Discussion*

    *1. Preliminary Procedural Matters*

        *a.  Plaintiff Roybal's Failure to Respond to the Motion to Dismiss and for Summary Judgment*

Although D.N.M. LR-Cv 7.1(b) provides that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion," the Court cannot summarily apply Local Rule 7.1(b) to the Motion to Dismiss and for Summary Judgment.  The Tenth Circuit Court of Appeals has clearly held that courts cannot "grant a motion to dismiss or a motion for summary judgment based solely on plaintiff's failure to respond and must consider the merits of the motion."  *Estate of Anderson v. Denny's Inc.*, 291 F.R.D. 622, 633 (D.N.M. 2013) (citing *Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003); *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002)).  Accordingly, the Court will address the merits of the Motion to Dismiss and for Summary Judgment.

        *b.  Plaintiff Roybal's Failure to File a Statement of Appellate Issues*

The Management Defendants argue that the Court should dismiss Plaintiff Roybal's claims for failure to prosecute because Plaintiff Roybal did not file a statement of appellate issues as required by Rule 1-074(J)(1).  In fact, Rule 1-704(X)(1) states that "[i]f an appellant

fails to file a statement of appellate issues in the district court as provided by these rules, such failure may be deemed sufficient grounds for dismissal of the appeal by the district court." Here, Plaintiff Roybal does not present any excuse or explanation for his failure to file a statement of appellate issues. Plaintiff Roybal has apparently abandoned his administrative appeal. The Court will, therefore, dismiss the administrative appeal without prejudice under Rule 1-074(X)(1) for failure to comply with Rule 1-074(J)(1). Dismissal of the administrative appeal under Rule 1-074(X)(1), however, does not necessarily mean that the Court should likewise dismiss the First Amended Complaint under Rule 1-074(X)(1).

The New Mexico courts have held that a "district court can simultaneously exercise its appellate and original jurisdiction." *See, e.g., Maso v. State of New Mexico Taxation & Revenue Dept., Motor Vehicle Div.*, 2004-NMCA-025 ¶ 17, 135 N.M. 152. In *Maso*, the New Mexico Court of Appeals noted that "the district court should consider each claim according to its appropriate standard of review and maintain the distinction between the court's appellate and original jurisdiction in rendering its decision." *Id.* Plaintiff Roybal explicitly alleged in the Complaint filed in state court that "[i]n addition to its appellate jurisdiction, this court also has original jurisdiction pursuant to the original jurisdiction of the New Mexico district courts." Complaint at ¶ 6. Since Plaintiff Roybal brought the Complaint under the state district court's original jurisdiction, the Complaint is subject to a different standard of review than an appellate case and it should not be treated as an administrative appeal. Consequently, Plaintiff Roybal's failure to file a statement of appellate issues does not adversely affect the Complaint and, by implication, the First Amended Complaint. Accordingly, Plaintiff Roybal's failure to file a statement of appellate issues does not justify a dismissal of the First Amended Complaint.

*2.  Standard of Review*

Because the Court will examine exhibits outside the First Amended Complaint in addressing the merits of the Motion to Dismiss or for Summary Judgment, it is appropriate that the Court use a summary judgment standard of review in its analyses. *See* Fed. R. Civ. P. 12(d) (if a party presents the court with "matters outside the pleading" and the court does not exclude those matters, then "the motion must be treated as one for summary judgment under Rule 56."). Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[3] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

---

[3] Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

3.  *The Merits of the Motion to Dismiss and for Summary Judgment*

　　a.  *Count 1:  the Due Process Claim*

The Due Process Clause of the Fourteenth Amendment states:  "No State shall … deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "The Due Process Clause encompasses two distinct forms of protections:  (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons."  *Salazar v. City of Albuquerque*, 2013 WL 5554185 *22 (D.N.M.) (slip op.) (citation omitted).  Defendants acknowledge that Plaintiff Roybal had a protected property interest in his employment. Plaintiff Roybal, unfortunately, does not specifically indicate if his due process claim is based on a lack of procedural due process or on a lack of substantive due process.  In the interests of justice, the Court will consider both types of due process in this discussion.

The Management Defendants argue that Plaintiff Roybal waived his procedural due process claim when he failed to raise that claim in a statement of appellate issues.  The New Mexico Court of Appeals, however, has held that plaintiffs should first bring due process claims in a complaint filed in state district court pursuant to the state district court's original jurisdiction instead of bringing those claims in an administrative proceeding.  *See, e.g., Victor v. New Mexico Dept. of Health*, __ N.M.__, 2013 WL 5536616 ¶ 26 (Ct. App.); *Los Chavez Community Ass'n v. Valencia County*, 2012-NMCA-044 ¶ 10, 277 P.3d 475; *Tri-State Generation and Transmission Ass'n, Inc. v. D'Antonio*, 2011-NMCA-014 ¶ 26, 149 N.M. 386.  Plaintiff Roybal followed the procedure described by the New Mexico Court of Appeals when he raised the due process claim

in the Complaint filed in state district court.  Hence, Plaintiff Roybal has not waived his

procedural due process claim by failing to raise it in a statement of appellate issues.

      The Management Defendants further argue that Plaintiff Roybal received all the

procedural due process he was due.  Before reaching that argument, the Court must first decide if

Plaintiff Roybal extinguished his procedural due process claim by failing to report to the

Substance Abuse Program Manager and failing to report to work.  The Tenth Circuit has ruled

that where plaintiffs "resign[] of their own free will, even as a result of Defendant's actions, then

they voluntarily relinquish[] their property interests and, thus, Defendant did not deprive them of

property without due process of law."  *Yearous v. Niobrara County Memorial Hosp.*, 128 F.3d

1351, 1356 (10th Cir. 1997).  Although Plaintiff Roybal did not voluntarily resign when

Defendant City of Albuquerque initially terminated his employment for failure to pass the

random drug test, Defendant City of Albuquerque, in effect, retracted that termination of

employment by reinstating Plaintiff Roybal to his job with full benefits and providing for back

pay.  Defendant City of Albuquerque ultimately terminated Plaintiff Roybal's employment

because his failure "to report to work … could be deemed an automatic resignation from

employment." Ex. A-15 (Doc. 17-3) at 5.  Plaintiff Roybal does not deny that he had the option

of returning to work and that he voluntarily chose not to do so.  *See Garcia v. City of*

*Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000) ("Since Garcia clearly had the option of

returning to work, we hold that his actions constitute a voluntary resignation").  Even viewing

the evidence in the light most favorable to Plaintiff Roybal, a reasonable jury could not find that

Plaintiff Roybal resigned from his employment under some kind of duress. Accordingly, Plaintiff

Roybal voluntarily relinquished his property interest in his employment and the Management

Defendants, therefore, did not deprive Plaintiff Roybal of a property interest without procedural due process.

Although the above discussion focuses on a claim of lack of procedural due process, the Court construes Plaintiff Roybal's allegation of an unfair process as a claim of lack of substantive due process. Although substantive due process protections apply only to tenured employees, the Court assumes, for the purpose of this analysis only, that Plaintiff Roybal was a tenured employee. *See id.* An employer violates an employee's substantive due process rights if the employer acts arbitrarily with regard to the employee. *See id.* at 771 and 771 n. 12 (applied arbitrary action standard and did not decide if "shock the conscience" standard should apply because defendant's actions were not arbitrary under any standard).

Plaintiff Roybal's fairness claims center around (1) Defendant Albin's recommendation to dismiss Plaintiff Roybal's appeal of his initial termination of employment and Defendant City Personnel Board's approval of that recommendation, and (2) Defendant City of Albuquerque's reinstatement of Plaintiff Roybal to his job and the subsequent disciplinary actions Plaintiff Roybal received for failing the random drug test. Since Plaintiff Roybal declined to attend Defendant Albin's prehearing conference and to submit a written response to Defendant City of Albuquerque's motion to dismiss based on mootness, Defendant Albin proceeded to address the mootness argument without setting another evidentiary hearing. Viewing those circumstances in the light most favorable to Plaintiff Roybal, a reasonable jury could not find that Defendant Albin's decision to not hold another evidentiary hearing was arbitrary. Defendant Albin also produced a thorough recommended decision and review of the evidence, and specifically noted that Defendant City of Albuquerque satisfied Plaintiff Roybal's stated goal in appealing the initial termination of employment by reinstating Plaintiff Roybal to his job with full benefits and

providing for back pay.  Ex. A-16 (Doc. 17-3) at 10.  Defendant Albin's recommendation to

dismiss the appeal on the grounds of mootness is well-reasoned and a reasonable jury viewing

the evidence in the light most favorable to Plaintiff Roybal could not find that her

recommendation was arbitrary.  Likewise, a reasonable jury viewing the evidence in the light

most favorable to Plaintiff Roybal could not find that Defendant City Personnel Board's

approval of that recommendation was arbitrary.

  Next, a reasonable jury viewing the evidence in the light most favorable to Plaintiff

Roybal could not find that Defendant City of Albuquerque's decision to reinstate Plaintiff

Roybal with full benefits and back pay under the second-chance drug policy was somehow

arbitrary.  Considering that a state district court held that the zero-tolerance drug policy was

invalid due to Defendant City of Albuquerque's failure to negotiate the drug testing penalties

with the unions, Defendant City of Albuquerque was obliged to halt application of that policy.

Additionally, application of the previous second-chance drug policy instead of the zero-tolerance

drug policy was a likely option, especially since there is no evidence that the second-chance

policy was invalid or otherwise unlawful.

  Plaintiff Roybal also asserts that Defendant City of Albuquerque should not have

imposed a 20-day suspension and issued an order to report to the Substance Abuse Program

Manager as discipline for failing the random drug test.  In other words, Plaintiff Roybal did not

want Defendant City of Albuquerque to discipline him at all for his admitted failure to pass the

random drug test.  Viewing the evidence in the light most favorable to Plaintiff Roybal, a

reasonable jury could not find that the decision to impose a 20-day suspension and to issue an

order to report to the Substance Abuse Program Manager, instead of terminating Plaintiff

Royal's employment, for admittedly failing the drug test was arbitrary. In sum, the Management

Defendants are entitled to summary judgment on Count 1, Plaintiff Roybal's due process claim.

### b.  Count 2:  Fourth Amendment Claim

The Management Defendants argue that the Fourth Amendment's warrant requirement

based on probable cause does not apply to the random drug testing of public transportation

employees like bus drivers.  The federal statute in effect during the time relevant to Plaintiff

Roybal's case, 49 U.S.C. § 5331(b)(1)(A) (effective August 10, 2005, to September 30, 2012),

required that the Secretary of the United States Department of Transportation "prescribe

regulations that establish a program requiring public transportation operations that receive

financial assistance under … this title to conduct … random … testing of public transportation

employees for safety-sensitive functions … for the use of a controlled substance in violation of

law or a United States Government regulation…."  According to the regulation in effect during

the time relevant to Plaintiff Roybal's case, operation of a revenue service vehicle, like a bus,

was a safety-sensitive function.  49 C.F.R. § 655.4 (2003).  Federal courts have held that if an

employee, "who occupies a safety sensitive position, was randomly chosen pursuant to federal

regulations to take a single drug test and there is no showing of abuse of that process," a Fourth

Amendment violation does not exist.  *See, e.g., Parry v. Mohawk Motors of Michigan, Inc.*, 236

F.3d 299, 307 (6th Cir. 2000).

In this case, it is undisputed that as a bus driver for Defendant City of Albuquerque

Plaintiff Roybal occupied a safety sensitive position and he was required under federal law to

participate in random drug testing.  There is no evidence, let alone any allegations, that the

process of randomly choosing Plaintiff Roybal for a random drug test was somehow abusive.  A

reasonable jury viewing the evidence in the light most favorable to Plaintiff Roybal could not

find that the Management Defendants violated Plaintiff Roybal's Fourth Amendment rights by randomly drug testing him without a warrant and probable cause.  Because Plaintiffs Sanchez and Smith's claims in Count 2 are the same as Plaintiff Roybal's claim, this analysis and determination also apply to Plaintiffs Sanchez and Smith's Count 2 claims.  Count 2 is, therefore, subject to summary judgment in its entirety.

<em>c. Count 3:  Unjust Discipline and Termination</em>

It is unclear whether Count 3 sounds in common law tort or whether it is a constitutional claim.  The Management Defendants contend that if Count 3 sounds in a common law tort, the NMTCA and concomitant doctrine of sovereign immunity bars Plaintiff Roybal from bringing that claim.  The NMTCA is the

> exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

NMSA 1978, § 41-4-17(A) (1976).  In other words, Plaintiffs may not sue a New Mexico governmental entity or its employees or agents, unless the cause of action falls within an exception to immunity listed under the NMTCA.  *See, e.g., Begay v. State*, 1985-NMCA-117, 104 N.M. 483, 486 (1985), *rev'd on other grounds by Smialek v. Begay*, 1986-NMSC-049, 104 N.M. 375.  The NMTCA does not provide any waiver of immunity regarding a tort for "unjust discipline and termination."  *See* NMSA 1978, § 41-4-5 (1976) to § 41-4-13 (1977).  Accordingly, the NMTCA bars any common law tort claim brought in Count 3.  If Plaintiff is alleging a constitutional claim in Count 3, that claim would be akin to the due process claim in Count 1 which the Court has already concluded is subject to summary judgment. For these reasons, the Management Defendants are entitled to summary judgment on Count 3.

20

> d.  *Count 4:  Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing*

The Management Defendants argue that Plaintiff Roybal has not specifically alleged how they breached an implied contract of employment.  The Management Defendants also contend that the Merit System Ordinance and personnel rules provided the exclusive remedy for Plaintiff Roybal's claims of breach of contract and breach of the duty of good faith and fair dealing.  In *Mascarenas v. City of Albuquerque*, a former City of Albuquerque employee, like Plaintiff Roybal, brought a breach of an implied contract claim based "on the merit system ordinance, the City's personnel rules and regulation, and the collective bargaining agreement governing employment with the City."  2012-NMCA-031, ¶ 29, 274 P.3d 781. The New Mexico Court of Appeals held that *res judicata* barred the plaintiff from raising the breach of contract claim in a civil complaint because the plaintiff could have brought that claim before the personnel board. *Id*. That is the situation here.  Plaintiff Roybal had the opportunity to present both his breach of contract claim and the breach of the duty of good faith and fair dealing claim to Defendant Albin and, therefore, to Defendant Personnel Board, but he did not do so.[4]  A reasonable jury viewing the evidence in the light most favorable to Plaintiff Roybal could not find that circumstances existed which would have prevented Plaintiff Roybal from presenting those claims in the administrative proceedings.  Consequently, as a matter of law, *res judicata* now bars Plaintiff Roybal from bringing the breach of contract claim and the breach of the duty of good faith and fair dealing claim.  The Management Defendants are, therefore, entitled to summary judgment on Count 4.

---

[4] A claim of breach of the duty of good faith and fair dealing, as in this case, sounds in contract and, therefore, cannot exist without a contract. *See Salazar*, 2013 WL 5554185 *27-28.  Since the breach of the duty of good faith and fair dealing is essentially a contract claim, it, like the breach of contract claim, could have been brought in the administrative proceedings.

*e.  Count 5:  Malicious Abuse of Process*

The Management Defendants correctly argue that the Court should grant summary judgment on the malicious abuse of process claim because the NMTCA does not waive immunity for that particular tort.  *See Salazar v. City of Albuquerque*, 776 F.Supp.2d 1217, 1243 (D.N.M. 2011) ("the NMTCA has not waived immunity for the claim[] of … malicious abuse of process against the Mayor and the Transit Department Director.").  This argument applies equally to Plaintiffs Sanchez and Smith's Count 5 claims.  Hence, Count 5 is subject to summary judgment in its entirety.

*f.  Count 6:  Unfair and Prohibited Labor Practices*

The Management Defendants contend that the Court should dismiss Count 6 because (1) they did not ultimately terminate Plaintiff Roybal's employment under any drug policy, and (2) any reference to Defendant City of Albuquerque's failure to negotiate drug testing penalties or reinstating a zero-tolerance policy is irrelevant because Defendant City of Albuquerque retracted its application of the zero-tolerance drug policy to Plaintiff Roybal.  The Court interprets these arguments to be lack of standing arguments.  In New Mexico, "standing requires that '(1) [the party is] directly injured as a result of the action they seek to challenge; (2) there is a causal relationship between the injury and the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision.'"  *Upsilon One, LLC v. Security Escrow of Valencia County*, 2012 WL 2309053 *1 (N.M. Ct. App.) (slip op.) (quoting *Staley v. New*, 56 N.M. 756, 758, 250 P.2d 893, 894 (1952)).  Standing is not jurisdictional in New Mexico.  *City of Artesia v. Public Employees Retirement Ass'n of New Mexico*, ___ P.3d ___, 2013 WL 5288275 ¶ 7 (N.M. Ct. App.).

In this case, Defendant City of Albuquerque's failure to negotiate with the unions regarding the zero-tolerance drug policy caused Plaintiff Roybal's initial termination of employment.  Thus, Plaintiff Roybal meets the first two requirements necessary to challenge Defendant City of Albuquerque's failure to negotiate with the unions regarding the zero-tolerance drug policy.  However, a reasonable jury viewing the evidence in the light most favorable to Plaintiff Roybal could not find that a court decision that Defendant City of Albuquerque's failure to negotiate the zero-tolerance drug policy amounted to an unfair and prohibited labor practice would redress the initial termination of Plaintiff Roybal's employment.  Here, Defendant City of Albuquerque already redressed that injury when it reinstated Plaintiff Roybal to his job with back pay and full benefits.  Moreover, a reasonable jury viewing the evidence in the light most favorable to Plaintiff Roybal could not find that Defendant City of Albuquerque's failure to negotiate with the unions regarding the zero-tolerance drug policy caused Plaintiff Roybal to receive a 20-day suspension and order to report to the Substance Abuse Program Manager.  That disciplinary action resulted from application of the second-chance policy which the record does not indicate was an un-negotiated drug testing policy.  Count 6 is, therefore, subject to summary judgment in favor of the Management Defendants.

g.  *Qualified Immunity for the Constitutional Claims*

Since the Court has already concluded that the Management Defendants are entitled to summary judgment on all of the Counts brought by Plaintiff Roybal, it is unnecessary for the Court to determine whether those Defendants also possess qualified immunity with respect to the constitutional claims.

C.  *Conclusion*

The Court concludes that Plaintiff Roybal's failure to file a statement of appellate issues justifies a dismissal without prejudice of the administrative appeal portion of Plaintiff Roybal's case, but not a dismissal of the First Amended Complaint.  The Court also concludes that the Management Defendants are entitled to summary judgment on the claims Plaintiff Roybal brought in Counts 1, 3, 4, and 6.  In addition, all of the Defendants are entitled to summary judgment on Counts 2 and 5.  Having concluded that the Management Defendants are entitled to summary judgment on Plaintiff Roybal's claims, the Court determines that it need not decide if those Defendants also have qualified immunity with regards to the constitutional claims.

IT IS ORDERED that

1.  the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment Dismissing Complaint in its Entirety (Doc. 16) is granted;

2.  Plaintiff Roybal's administrative appeal will be dismissed without prejudice;

3.  the Court will grant summary judgment in favor of  Defendants City of Albuquerque, Berry, Perry, Yermal, and Rizzieri on the claims brought by Plaintiff Roybal in Counts 1, 3, 4, and 6 of the First Amended Complaint;

4.  the Court will dismiss those claims with prejudice;

5.  the Court will grant summary judgment in favor of all of the Defendants on Counts 2 and 5 of the First Amended Complaint; and

6.  the Court will dismiss with prejudice Counts 2 and 5 of the First Amended Complaint.

_____
UNITED STATES DISTRICT JUDGE

24